performance of his duty to the Company unless, and only to the extent that, the court in which such action or suit was brought shall determine upon application that, despite the adjudication of liability, but in view of all the circumstances of the case, such person is fairly and reasonably entitled to indemnity for such expenses as the court shall deem proper.

9.3     **Survival**. Indemnification under this Article 9 shall continue as to a person who has ceased to serve in the capacity which initially entitled such person to indemnity hereunder. The rights granted pursuant to this Article 9 shall be deemed contract rights, and no amendment, modification or repeal of this Article 9 shall have the effect of limiting or denying any such rights with respect to actions taken or Proceedings arising prior to any such amendment, modification or repeal.

## ARTICLE 10
## TAX MATTERS

10.1     **Election Under Section 754 of the Code**. In the event of any transfer described in Section 743(b) of the Code or any distribution described under Section 734 of the Code, which, in either case, is permitted by the provisions of this Agreement, the Managing Member shall cause the Company to make, upon the timely written request of the Person succeeding to an Interest in the case of such a transfer or in the Managing Member's sole determination in the case of such a distribution, the election provided for in Section 754 of the Code. The successor Person requesting such election (in the case of a transfer described in Section 743(b) of the Code) or the Company (in the case of a distribution described in Section 734 of the Code) shall pay all costs and expenses incurred by the Company in connection therewith.

10.2     **Accountant**. The Company shall engage such certified public accountant, or firm of certified public accounts, as the Managing Member shall so determine in its sole discretion to prepare the books and records, as well as any and all tax filings, of the Company.

10.3     **Tax Matters Member**. Reach Global is hereby designated the Tax Matters Member (the "TMM") of the Company for purposes of Chapter 63 of the Code and the Treasury Regulations thereunder.

(a) Each Member shall furnish the TMM with such information as the TMM may reasonably request to permit it to provide the Internal Revenue Service with sufficient information to allow proper notice to the parties in accordance with Section 6223 of the Code.

(b) No Member shall file, pursuant to Section 6227 of the Code, a request for an administrative adjustment of Company items for any Company taxable year without first notifying the other Members. If the other Members agree with the requested adjustment, the TMM shall file the request for administrative adjustment on behalf of the Company. If the Members do not reach agreement within 30 days or within the period required to timely file the request for administrative adjustment, if such period is shorter, any Member may file a request for administrative adjustment on its own behalf. If, under Section 6227 of the Code, a request for administrative adjustment which is to be made by the TMM must be filed on behalf of the Company, the TMM shall also file such a request on behalf of the Company under the cir-

cumstances set forth in the preceding sentence.

(c) If any Member intends to file a petition under Section 6226 or 6228 of the Code with respect to any Company item or other tax matter involving the Company, the Member so intending shall notify the other Members of such intention and the nature of the contemplated proceeding. Such notice shall be given in a reasonable time to allow the other Members to participate in the choosing of the forum in which such petition will be filed. If the Members do not agree on the appropriate forum, the petition shall be filed with the United States Tax Court. If any Member intends to seek review of any court decision rendered as a result of the proceeding instituted under the preceding part of this Section 10.3(c), such party shall notify the others of such intended action.

(d) The TMM shall not bind the other Members to a settlement agreement without the approval of a majority in Interest of the Members. If any Member enters into a settlement agreement with the Secretary of the Treasury with respect to any Company items, as defined by Section 6231(a)(3) of the Code, it shall notify the other Members of such settlement agreement and its terms within thirty days from the date of settlement.

## ARTICLE 11
## DISSOLUTION AND
## TERMINATION OF A MEMBER

11.1  **Dissolution**. The Company shall be dissolved upon the occurrence of any of the following events (a "Dissolution Event"):

(a) the unanimous vote of the Members; provided, however, that Majority Consent shall be sufficient for the purposes hereof if, prior to such vote, Reach Global has been removed For Cause as the Managing Member in accordance with Section 7.1(a);

(b) the entry of a decree of judicial dissolution under Section 702 of the Act;

(c) the sale by the Company of all or substantially all of its assets; or

(d) upon the Bankruptcy (as defined in Section 11.5 below) or dissolution of a Member or occurrence of any other event that terminates the continued membership of a Member in the Company unless the business of the Company is continued by Majority Consent within One Hundred and Eighty (180) days following such event.

11.2  **Distribution of Assets Upon Dissolution**. Subject to Section 11.6 below, in settling accounts after a Dissolution Event, the net assets of the Company shall be applied in the following order of priority:

(a) First, to the creditors (including Members who are creditors), to the extent otherwise permitted by law, other than liabilities for distributions to Members;

(b) Then, for the establishment of reasonable reserves for liabilities (including,

without limitation, contingent liabilities) and other expenses of the Company, as shall be determined by the Managing Member in its sole discretion; and

(c) Then, to the Members with positive Capital Account balances after giving effect to the allocation of all Company items, in proportion to said positive balances.

Any amounts required to be distributed pursuant to this Section 11.2 shall be distributed to the Members no later than the later of (a) the end of the taxable year of the Company in which the Dissolution Event occurs or (b) within ninety (90) days after the date of the Dissolution Event. after payment of all Company liabilities and expenses (or adequate provision therefor).

11.3 **Winding Up**. Except as provided by law, upon dissolution, each Member shall look solely to the assets of the Company for the return of its Unrecovered Capital Contributions. If the Company Property remaining after the payment or discharge of the debts and liabilities of the Company is insufficient to return the Unrecovered Capital Contributions of each Member, such Member shall have no recourse against the Company, the Managing Member or any other Member. The winding up of the affairs of the Company and the distribution of its assets shall be conducted exclusively by the Members, who are hereby authorized to take any and all actions necessary to accomplish such distribution including, without limitation, selling any Company assets the Members deem necessary or appropriate to sell.

11.4 **Articles of Dissolution**. When all debts, liabilities and obligations have been paid and discharged or adequate provisions have been made therefor and all of the remaining property and assets have been distributed to the Members, a Articles of Dissolution shall be executed and filed pursuant to of the Act, and shall contain the information required by the Act.

11.5 **Bankruptcy Events**. For purposes of this provision, the term "Bankruptcy" shall include the following:

(a) making an assignment for the benefit of creditors;

(b) filing a voluntary petition in bankruptcy;

(c) being adjudged bankrupt or insolvent, or having entered against a Member an order for relief, in any bankruptcy or insolvency proceeding;

(d) filing a petition or answer by a Member seeking for himself any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any statute, act or regulation;

(e) filing an answer or other pleading by a Member admitting or failing to contest the material allegations of a petition filed against him in any proceeding of this nature; or

(f) seeking, consenting to or acquiescing in the appointment of a trustee, receiver or liquidator of the Member or of all or any substantial part of its assets.

11.6 **Special Distribution.**

(a) If a Dissolution Event (other than pursuant to Section 11.1(c)) occurs prior to October 19, 2006 and, at the time of the occurrence of such Dissolution Event, Reach Global shall have been removed For Cause as the Managing Member, then Reach Global shall thereupon forfeit its Percentage Interest to the Company and, consequently, shall not participate in or receive any distribution of the net assets of the Company. Reach Global's Percentage Interest shall then be allocated pro rata among the remaining Members and the net assets of the Company (after giving effect to Sections 11.2 (a) and (b) above) shall be distributed in kind to the remaining Members in proportion to their respective Percentage Interests, as adjusted herein.

(b) If a Dissolution Event (other than pursuant to Section 11.1(c)) occurs either (i) prior to October 19, 2006 but, at the time of the occurrence of such Dissolution Event, Reach Global shall not have been removed For Cause as the Managing Member or (ii) on or after October 19, 2006 , then the net assets of the Company (after giving effect to Sections 11.2 (a) and (b) above) shall be distributed in kind to the Members in proportion to their respective Percentage Interests.

(c) Distribution of any asset in kind to a Member shall be considered as a distribution of an amount equal to the asset's fair market value for purposes of this Article 11.

# ARTICLE 12
# RESTRICTION ON TRANSFERS

12.1 **Restrictions on Transfers.** No Member may Transfer all or any portion of, or any interest or rights in, the Member's Interest or any portion thereof, except and unless such Transfer shall be pursuant to (i) Section 12.2 hereof or (ii) Section 12.3 hereof. Any Transfer by a Member that is not pursuant to the foregoing shall be void and of no effect, and the Company shall give no effect thereto. Notwithstanding the foregoing, no Transfer shall occur unless the following conditions are satisfied:

(a) the Transfer will not require registration of the transferring Member's Interest under any federal or state securities laws; and

(b) the transferee delivers to the Company a written instrument agreeing to be bound by the terms of this Agreement.

12.2 **Offers to Members.** Any Member may freely Transfer its Interest to any other Member.

12.3 **Offers to Third Parties.**

(a)     In the event that a Member (the "**Offering Member**") shall receive a Bona Fide Offer (as defined below) to purchase some or all of the Offering Member's Interest (the "**Offered Interest**"), and in the further event that the Offering Member shall desire to accept the Bona Fide Offer, the Offering Member shall promptly send Registered Notice to the Company and the other Members (the "**Remaining Members**") offering to sell the Offered Interest to the Remaining Members, in proportion to their Percentage Interests, at a mutually agreeable price and upon mutually agreeable terms, all of which shall be negotiated in good faith (the "**Member Offer**"); provided, however, that the Offering Member shall have no obligation to accept any offer from a Remaining Member wherein the price and terms offered in the Member Offer are less favorable to the Offering Member than the price and terms set forth in the Bona Fide Offer. Such Member Offer by its terms shall remain open and irrevocable until the expiration of the thirty (30) day period beginning with the date of the Offering Member's mailing of the Registered Notice (the "**Exercise Period**"). Notice of a Remaining Member's intention to accept, in whole or in part, the Member Offer shall be evidenced by a writing signed by such Remaining Member and delivered to the Offering Member, with a copy to the Company, at or prior to the end of the Exercise Period, setting forth such portion of the Offered Interest that such Remaining Member elects to purchase (the "**Notice of Acceptance**"). If any Remaining Member declines to purchase all or any part of his pro rata Offered Interest, then the Remaining Member who elected to purchase his respective Offered Interest shall have the right, but not the obligation, to negotiate with the Offering Member, in good faith, the purchase of some or all of the aggregate of the un-purchased Offered Interest at or prior to the end of the Exercise Period.

(b)     The Offering Member shall have thirty (30) days after expiration of the Exercise to sell all or any portion of the Offered Interest as to which a Notice of Acceptance has not been given by the Remaining Members to any other person or persons, but only upon terms and conditions in all material respects which are no more favorable, in the aggregate, to such other person or persons or less favorable to the Remaining Members than those set forth in the Member Offer. Any Offered Interest not purchased by the Remaining Members or by any person or persons pursuant to the immediately preceding sentence may not be sold or otherwise disposed of until it is again offered under the procedures specified herein.

(c)     Definitions.    The following terms shall have the following meanings whenever used in this Section 12.3: "**Bona Fide Offer**" shall mean a legally enforceable offer in writing, made and signed by an offeror or offerors who is, or who are, not a Member and who is a person or persons or entity or entities financially capable of carrying out the terms of such Bona Fide Offer. "**Registered Notice**" shall mean notice sent via certified or registered mail, for the purposes of informing the Company and the Members of a proposed sale of a Member's Interest and which shall contain the material terms of the Bona Fide Offer.

12.4   **No Withdrawal.** Notwithstanding any provisions in this Agreement to the contrary, without the prior written consent of the Managing Member no Member may resign, withdraw or take any other action that would cause a dissolution of the Company prior to the termination of the Company pursuant to Section 11.1.

## ARTICLE 13
## MISCELLANEOUS

13.1  **Tense or Gender.** All terms and words used in this Agreement, regardless of the tense or gender in which they are used, shall be deemed to include each other tense and gender unless the context requires otherwise.

13.2  **Further Assurances.** The Members agree immediately and from time to time to execute, acknowledge, deliver, file, record and publish such further certificates, amendments to certificates, instruments and documents, and to do all such other acts and things as may be required by law, or, in the opinion of a majority in Interest of the Members, as may be necessary or advisable to carry out the intent and purposes of this Agreement.

13.3  **Notices.** Unless otherwise specified in this Agreement, all notices, demands, requests or other communications which any of the parties to this Agreement may desire or be required to give hereunder (hereinafter referred to collectively as "**Notices**") shall be in writing and shall be delivered by hand or mailed by registered or certified mail, postage prepaid, to the appropriate Member or to the Company at the address set forth below:

If to Reach Global:

> Reach Global, Inc.
> 445 Park Avenue, 9th Floor
> New York, NY 10022
> Attn: Michael Closter
> (212) 348-4594 (fax)

with a courtesy copy to:

> Brad D. Rose, Esq.
> Pryor Cashman Sherman & Flynn LLP
> 410 Park Avenue, 10th Floor
> New York, NY 10022
> (212) 326-0806 (fax)

If to BTNM:

> Bring The Noize Music, Inc.
> 3 Third Place
> Roosevelt, New York 11575
> Attn: Carlton Ridenhour
> (323) 965-9420 (fax)

with a courtesy copy to:

> Walter F. Leaphart, Jr.
> 539 North Citris Avenue
> Los Angeles, CA 90036
> (323) 965-9420 (fax)

If to Knight Owl:

>Knight Owl Productions, LTD.
>539 North Citris Avenue
>Los Angeles, CA 90036
>Attn: Walter F. Leaphart, Jr.
>(323)-965-9420 (fax)

Notice may also be sent to such other addresses or substitute addresses of which a Member advises the Company by notice given in the manner set forth herein. Notices given in compliance with the provisions of this Article shall be deemed given on the date of the by-hand delivery or four (4) days after such mailing.

13.4 **Governing Law.** The parties agree that the parties shall be governed by, and this Agreement shall be construed in accordance with, the laws of the State of New York applicable to agreements made and to be performed in such State (without regard to choices of laws) and that all claims and suits shall be heard in the courts located in the State of New York.

13.5 **Heading.** All Section titles or captions contained in this Agreement are for convenience only and shall not be deemed a part of this Agreement.

13.6 **Counterparts.** This Agreement may be executed in counterparts and each counterpart so executed by each Member shall constitute an original, all of which when taken together shall constitute one agreement, notwithstanding that all the parties are not signatories to the same counterpart.

13.7 **Entire Agreement.** This Agreement is the entire agreement among the parties with respect to the subject matter hereof and supersedes all prior agreements relative to such subject matter.

13.8 **Amendments.** Subject to Section 7.1(b), this Agreement may not be changed, modified, amended waived or discharged, in whole or in part, unless in writing and signed by all of the Members.

13.9 **Severability.** If any term or provision of this Agreement or the application thereof to any person or circumstance shall to any extent be invalid or unenforceable, the remainder of this Agreement or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable shall not be affected thereby and each term and provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

13.10 **Headings.** The headings in this Agreement are inserted for convenience and identification only and are in no way intended to describe, interpret, define or limit the scope, extent or intent of this Agreement or any provision hereof.

13.11 **Parties Bound.** This Agreement shall be binding upon the Members and their

respective successors, assigns, heirs, devises, legal representatives, executors and administrators. Any person acquiring or claiming an Interest in the Company, in any manner whatsoever, shall be subject to and bound by all the terms, conditions and obligations of the Agreement to which his predecessor in Interest was subject or bound, without regard to whether such person has executed this Agreement or a counterpart hereof or any other document contemplated hereby. No person shall have any rights or obligations relating to the Company greater than those set forth in this Agreement, and no person shall acquire an Interest in the Company or become a Member thereof except as permitted by the terms of this Agreement.

   13.12   **Strict Construction.** It is the intent of the Members upon execution hereof that this Agreement shall be deemed to have been prepared by all of the parties. The language in all parts of this Agreement shall be in all cases construed simply according to its full meaning and not strictly for or against any of the Members.

   13.13   **Singular and Plural Terms.** The singular of any defined term or any term used herein shall be deemed to include the plural.

   13.14   **Arbitration.** Any dispute arising under this Agreement relating to the removal of the Managing Member pursuant to subsection (c) of the definition of 'For Cause' (as defined in Section 1.1 hereof) shall be resolved by binding arbitration after written demand from one party to the other. If the parties cannot agree on a single arbitrator within thirty (30) days after written demand for arbitration, the arbitrator shall be selected pursuant to the rules and regulations of the American Arbitration Association governing commercial transactions. The arbitration proceeding shall be conducted within ninety (90) days of any demand for arbitration. If reasonable, as determined by the arbitrator, it shall be conducted on a single day with each party being allowed an equal amount of time to present its case. No discovery shall be allowed except that each party shall submit to the other and to the arbitrator, no later than thirty (30) days prior to the proceeding, copies of all documents to be presented, the names and occupations of all proposed witnesses, and a written summary of the substance of their proposed testimony. The arbitrator shall exclude any evidence not presented within such time period to the other party and the arbitrator as required by this Section. The parties shall submit such legal briefing or other statements of position as the arbitrator may request. The parties to such arbitration shall each pay one-half of the costs of any such arbitrator. Any arbitration decision or award shall be final and not subject to appeal to any court of law, except in the case of a manifest error in the application of law. The parties hereto specifically covenant to one another that they shall not commence litigation against one another with respect to any dispute subject to arbitration hereunder for any reason except as may be necessary to enforce this provision or an arbitrator's decision or award. In the event litigation shall be required to enforce this Section or the arbitrator's decision or award, the prevailing party shall be paid its reasonable attorneys' fees and costs. During the period of any arbitration proceeding pursuant to this Section, the Managing Member whose removal is the subject of such arbitration shall remain and continue to serve as the Managing Member of the Company.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

**BRING THE NOIZE MUSIC, INC.**

By: _____
Carlton Ridenhour, President

**REACH GLOBAL, INC.**

By: _____
Michael Closter, President

**KNIGHT OWL PRODUCTIONS, LTD**

By: _____
Walter F. Leaphart, Jr, President

## EXHIBIT A

### Articles of Organization

## ARTICLES OF ORGANIZATION

## OF

## TERRORDOME MUSIC PUBLISHING, LLC

Under Section 203 of the New York Limited Liability Company Law

FIRST: The name of the limited liability company is:

Terrordome Music Publishing, LLC

SECOND: The county within this state in which the office of the limited liability company is to be located is: New York County.

THIRD: The Secretary of State of the State of New York (the "Secretary of State") is designated as agent of the limited liability company upon whom process against the limited liability company may be served. The post office address to which the Secretary of State shall mail a copy of any process against the limited liability company served upon him or her is as follows:

> c/o Reach Global, Inc.
> 445 Park Avenue
> 9th Floor
> New York, NY 10022
> Attn: Michael Closter

FOURTH: The limited liability company is to be managed by one or more members.

IN WITNESS WHEREOF, this certificate has been subscribed this ___ day of October, 2001, by the undersigned who affirms that the statements made herein are true under the penalties of perjury.

_____

253024

## SCHEDULE A

### Initial Capital Contributions

BTNM – $500.00 cash and property having a fair market value of $10,000.00 in the form of an assignment of certain copyrights pursuant to that certain Copyright Assignment made by BTNM in favor of the Company, a true and correct copy of which is on file with the Company.

Reach Global – $500.00 cash.

Knight Owl – $500.00 cash.

## SCHEDULE B

### Percentage Interest

| | |
|---|---|
| BTNM | 50% |
| Reach Global | 34% |
| Knight Owl | 16% |

# AMENDMENT NO. 1

## TO THE

## OPERATING AGREEMENT

## OF

## TERRORDOME MUSIC PUBLISHING, LLC

**Amendment No. 1 to the Operating Agreement of Terrordome Music Publishing, LLC** (the "Amendment") made as of the 6th day of July, 2010, by and among Bring the Noize Music, Inc., a New York corporation ("BTNM"), and Reach Global, Inc., a Delaware corporation ("Reach Global"). Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the LLC Agreement (as defined below).

### WITNESSETH:

**WHEREAS**, Knight Owl Productions, Ltd., an Illinois corporation ("Knight Owl"), BTNM and Reach Global were parties to the Operating Agreement of Terrordome Music Publishing, LLC (the "Company"), dated as of January 10, 2002 (the "LLC Agreement");

**WHEREAS**, on July 6, 2010, BTNM and Reach Global purchased all of Knight Owl's Interests in the Company; and

**WHEREAS**, the parties hereto desire to amend the LLC Agreement to confirm the ownership of Interests by BTNM and Reach Global and to make such other amendments as set forth herein.

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereby agree as follows:

**SECTION 1.** <u>Ownership of Interests</u>. BTNM and Reach Global hereby confirm and ratify the their ownership of the Percentage Interests of the Company as set forth below:

| Name of Member | Percentage Interest |
|---|---|
| BTNM | 58% |
| Reach Global | 42% |

**SECTION 2.** <u>Schedule</u>. Schedule B to the LLC Agreement is hereby amended by deleting it in its entirety and replacing it with the new <u>Schedule B</u> as attached hereto.

**SECTION 3.** <u>Definitions</u>. The definition of "Reach Global Purchase Right" in Article 1 shall be deleted.

**SECTION 4.**     <u>Actions Requiring Majority Consent</u>. Section 7.2 of the LLC Agreement is hereby amended by deleting it in its entirety and replacing it with the following:

"7.2    <u>Intentionally Omitted</u>. This Section has been intentionally omitted."

**SECTION 5.**     <u>Actions Requiring Unanimous Consent</u>. Section 7.3 of the LLC Agreement is hereby amended by deleting it in its entirety and replacing it with the following:

"7.3    <u>Actions Requiring Unanimous Consent</u>. Unanimous consent of the Members shall be required to take the following actions on behalf of the Company:

(a)    To invest and reinvest the Company's funds, including the lending of money, and receive and hold property as security for repayment;

(b)    To pay, and reimburse the Managing Member for, all expenses incurred in connection with the conduct of the Company's business, the establishment of Company offices, and the exercise of the powers of the Company, in all cases within or without the State of New York;

(c)    To sell, transfer, convey, pledge, exchange or otherwise dispose of any Company property;

(d)    To acquire additional property and assets on behalf of the Company;

(e)    To borrow money from banks, other lending institutions, the Members or otherwise;

(f)    To hypothecate, encumber, mortgage, and grant security interests in any of the Property;

(g)    To employ, compensate, or otherwise engage any Member or an Affiliate of any Member;

(h)    To participate in partnerships, joint ventures, limited liability companies, corporations or other associations of any kind with any Person or Persons;

(i)    Except for duties and powers expressly granted herein to the Tax Managing Member, to employ accountants, legal counsel, managing agents or other experts to perform services for the Company and to compensate them from the Company funds;

1028329

2

  (j) To sell any, all or substantially all of the assets of the Company (nothing contained in this subparagraph (j) shall in any way affect a Member's right to Transfer its Interest in accordance with Article 12 hereof);

  (k) To amend this Agreement;

  (l) To amend the Articles of Organization;

  (m) To merge or consolidate the Company with or into any other Person;

  (n) To take any action in furtherance of the dissolution of the Company; or

  (o) To do any act in contravention of this Agreement or which is not in furtherance of the Purpose of the Company."

**SECTION 6.** Actions by Members. Section 7.4 of the LLC Agreement is hereby amended by deleting it in its entirety and replacing it with the following:

"7.4 **Actions by Members.** With respect to actions requiring Majority Consent or unanimous consent of the Members pursuant to Section 7.3, the Members may act by written consent or upon the vote of the Members at a regularly scheduled or special meeting (physical, telephonic or otherwise) of the Members (provided that notice of such meeting is given at least 5 days prior to such meeting). Except as otherwise provided in this Agreement, no Member shall have the right to control nor shall take part in the management or control of, the Company's day-to-day business or activities."

**SECTION 7.** Dissolution. Section 11.1(d) of the LLC Agreement is hereby amended by deleting it in its entirety and replacing it with the following:

"(d) upon the Bankruptcy (as defined in Section 11.5 below) or dissolution of a Member or occurrence of any other event that terminates the continued membership of a Member in the Company unless the business of the Company is continued by the unanimous consent of the remaining Members within One Hundred and Eighty (180) days following such event."

**SECTION 8.** Special Distribution. Section 11.6 of the LLC Agreement is hereby amended by deleting it in its entirety and replacing it with the following:

"11.6 Special Distribution.

  (a) If a Dissolution Event (other than pursuant to Section 11.1(c)) occurs then the net assets of the Company (after giving effect to Sections

1028329

3

11.2 (a) and (b) above) shall be distributed in kind to the Members in proportion to their respective Percentage Interests.

(b) Distribution of any asset in kind to a Member shall be considered as a distribution of an amount equal to the asset's fair market value for purposes of this Article 11."

**SECTION 9.** Notices. Section 13.3 of the LLC Agreement is hereby amended by deleting it in its entirety and replacing it with the following:

" 13.3 Notices. Unless otherwise specified in this Agreement, all notices, demands, requests or other communications which any of the parties to this Agreement may desire or be required to give hereunder (hereinafter referred to collectively as "Notices") shall be in writing and shall be delivered by hand or mailed by registered or certified or overnight express mail, postage prepaid, to the appropriate Member or to the Company at the address set forth below:

|  |  |
|---|---|
| If to Reach Global: | Reach Global, Inc.<br>3500 Rose Crest Lane<br>Fairfax, VA 22033<br>Attn: Michael Closter<br>(561) 584-5974 (fax) |
| with a courtesy copy to: | Brad D. Rose, Esq.<br>Pryor Cashman LLP<br>7 Times Square, 39th Floor<br>New York, NY 10036<br>(212) 326-0806 (fax) |
| If to BTNM: | Bring The Noize Music, Inc.<br>3 Third Place<br>Roosevelt, New York 11575<br>Attn: Carlton Ridenhour<br>(323) 965-9420 (fax) |

Notice may also be sent to such other addresses or substitute addresses of which a Member advises the Company by notice given in the manner set forth herein. Notices given in compliance with the provisions of this Article shall be deemed given on the date of the by-hand delivery or four (4) days after such mailing."

**SECTION 10.** Ratification, Etc. Except as otherwise expressly set forth herein, all terms and conditions of the LLC Agreement are hereby ratified and confirmed and shall remain

1028329

4

in full force and effect. Except as expressly set forth herein, nothing herein shall be construed to be an amendment or a waiver of any requirements of the LLC Agreement.

SECTION 11. Counterparts. This Amendment may be executed in two or more counterparts each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

SECTION 12. Governing Law. This Agreement shall be governed by and construed and enforced in accordance with the internal laws of the State of New York without regard to conflicts of laws principles.

1028329

IN WITNESS WHEREOF, the parties hereto have executed and acknowledged this Amendment as of the date first above written.

REACH GLOBAL, INC.

By: _____
Name: Michael Closter
Title: President

BRING THE NOIZE MUSIC, INC.

By: _____
Name: Carlton Ridenhour
Title: President

1028329

## SCHEDULE B

### Percentage Interests of Members

| Name of Member | Percentage Interest |
|---|---|
| BTNM | 58% |
| Reach Global | 42% |

1028329